UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| PATTI HAMMOND SHAW, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 11-0946 (ESH) ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) |
| Defendants. | ) ) ) |

**MEMORANDUM OPINION**

Plaintiff Patti Hammond Shaw, a transgendered female who has undergone sex reassignment surgery and had her sex legally changed to female, brings this civil damages action against defendant District of Columbia (the "District") alleging that her treatment upon her arrest and while she was detained violated her rights under the Eighth Amendment to the United States Constitution and District of Columbia statutory and common law.  Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 56, the District has moved to dismiss or, in the alternative, for summary judgment.[1]  (District Mot. to Dismiss, July 27, 2011 [Dkt. No. 7] ("District Mot.").)  For the reasons stated herein, the District's motion will be **GRANTED IN PART AND DENIED IN PART**.  Plaintiff's Eighth Amendment claim, brought under 42 U.S.C. § 1983, and her claims for assault, battery, negligence, and punitive damages will be dismissed; plaintiff's remaining, non-federal, claims, alleging violations of the D.C. Human Rights Act and intentional

---

[1] Plaintiff's complaint named two additional defendants, the United States Marshals Service ("Marshals Service") and the United States Attorney General, whose motion to dismiss was previously granted. (Order, July 19, 2011 [Dkt. No. 6].)

or negligent infliction of emotional distress will be remanded to the Superior Court of the District of Columbia.

## BACKGROUND

As alleged in the Amended Complaint, at the time the events giving rise to this action occurred, plaintiff, a 44-year old transgendered African-American, had undergone sex reassignment surgery and had her sex legally changed to female. (Amended Compl. ¶ 3.) On May 24, 2009, at around 10:30 p.m., she dialed 911 to report that she thought her friends had stolen her purse from her house. (*Id.* ¶ 8.) Some time later, she called 911 again to ask why the police had not yet arrived. (*Id.* ¶ 9.) Eventually, and before any police appeared, she found her purse in the house. (*Id.* ¶ 10.)

Later that same evening, plaintiff was in her front yard with her dogs when she was robbed by two young men. (*Id.* ¶ 11.) She called 911 again and, around midnight, two Metropolitan Police Department (MPD) officers arrived at her house. (*Id.* ¶¶ 12, 13.) Plaintiff described the robbery and also explained that she had made a mistake when she called about the theft of her purse. (*Id.* ¶ 13.) The officers told plaintiff that they were going to ask a detective to come to her house and, about ten to fifteen minutes later, Detective Kevin Tighe of the MPD arrived. (*Id.* ¶¶ 13, 14.) Plaintiff tried to tell her story to Detective Tighe, but he was "rude," and, "[i]nstead of asking about the incident," he "questioned her about personal information such as whether she was married, who lived with her and whether she takes medication." (*Id.* ¶¶ 14, 15.) Detective Tighe also asked plaintiff for her social security number and looked around the inside of her home. (*Id.* ¶ 15.)

A few days later during a telephone conversation, Detective Tighe told plaintiff that he

disbelieved her story and that he was going to issue a warrant for her arrest for making a false report to a police officer. (*Id.* ¶¶ 15, 16.) Detective Tighe executed a warrant which noted that plaintiff had identified herself to the responding police officers as a female, but that he would consider her a male for purposes of his criminal complaint. (*Id.* ¶¶ 16, 17.) Despite plaintiff's efforts to explain the situation, on June 13, 2009, she was served with a letter stating that there was a warrant for her arrest and requesting that she turn herself in. (*Id.* ¶¶ 17, 18.) On June 18, 2009, at 4:00 a.m., plaintiff turned herself in to the Sixth District Police Department, located at 100 42nd Street NE, Washington, DC. (*Id.* ¶ 19.)

After taking plaintiff's fingerprints, the MPD officers on duty learned that plaintiff was previously a man named Melvin Hammond. (*Id.* ¶ 20.) Plaintiff informed the officers that her sex had been legally changed to female, and she presented identification showing that to be the case. (*Id.* ¶ 21.) Nonetheless, plaintiff was placed in the men's lockup unit, albeit in a cell by herself, and held there for approximately four hours. (*Id.* ¶¶ 22, 23.) During that time, the male inmates verbally harrassed plaintiff by requesting to see her vagina, breasts and buttocks. (*Id.* ¶ 23.) In addition, as plaintiff was being removed from her cell, the male inmate who was being brought in touched her on the buttocks. (*Id.* ¶ 24.)

From the men's lockup unit, MPD officers took plaintiff to the District of Columbia Superior Court, located at 500 Indiana Avenue NW, Washington, DC, where they turned her over to the United States Marshals Service ("Marshals Service"). (*Id.* ¶ 25.) Once in the custody of the Marshals Service, plaintiff was repeatedly asked her to state her name and when she answered by providing her legal female name, she was told that she was wrong, that she was a man, and that her "real" name was Melvin, even though plaintiff repeatedly stated that she was

3

female and showed them her legal identification which stated "F" under "Sex." (*Id.* ¶ 26.) A female marshal was prepared to search plaintiff, but then one of the male deputy marshals, stating that plaintiff was a man and should be searched by a man, took her to another room where male inmates were being processed and searched her. (*Id.* ¶ 27.) In the course of his search, which lasted about five minutes, that deputy marshal groped plaintiff's breasts, buttocks and between her legs repeatedly and excessively. (*Id.* ¶ 27.) During this time, deputy marshals also verbally harassed plaintiff, making jokes about her breasts and gender such as, "those must be implants, because hormones don't make breast stand up so perky like that" and "he's the best I've ever seen." (*Id.* ¶ 28.)

   Around 8:00 a.m., deputy marshals put plaintiff in a holding facility with approximately thirty men that were going to traffic court. (*Id.* ¶ 29.) Several of the men in the holding facility touched her inappropriately, verbally harassed and propositioned her, threatened to punch her if she did not show her breasts and shook their penises at her. (*Id.*) Plaintiff asked to be moved, explaining to the deputy marshals that she should not be held with the men, but she was left in the holding facility until late afternoon. (*Id.* ¶ 30.) During that time, plaintiff's request that she be taken to another location to urinate was denied, so she was forced to urinate into a cup in full view of the men in the holding facility. (*Id.* ¶ 31.) Around 4:00 p.m., deputy marshals took plaintiff and five other detainees to a courtroom. (*Id.* ¶ 32.) They were all in handcuffs attached by chains to their waists. (*Id.*) One of the other detainees touched plaintiff inappropriately several times. (*Id.*) When plaintiff complained, deputy marshals told the man to stop and told plaintiff to ignore him. (*Id.*) When the man continued his inappropriate behavior, the deputy

marshals took no further action. (*Id.*)   Plaintiff was released after her court appearance.[2]  (*Id.* ¶ 33.)

On November 24, 2009, plaintiff notified the District that she intended to file a lawsuit seeking damages for her treatment by MPD police officers and deputy marshals while in custody on June 18, 2009.  (Def.'s Mot., Ex. 1.)  On February 2, 2011, plaintiff initiated the above-captioned action by filing a complaint in Superior Court against the District, as well as the Marshals Service and the United States Attorney General.  (Compl., Feb. 2, 2011.)  That complaint included claims under the D.C. Human Rights Act, and for the common law torts of assault, battery, intentional and negligent infliction of emotional distress, and negligence.  (*Id.*)  On May 16, 2011, plaintiff amended the complaint to claim that defendants had violated her right under the Eighth Amendment to the United States Constitution to be free from cruel and unusual punishment.  (Am. Compl. ¶¶ 88-96.)  After plaintiff added the federal claim, the District, with the consent of the federal defendants, removed the case to federal court.  (Notice of Removal, May 20, 2011 [Dkt. No. 1].)

On June 30, 2011, the United States filed a motion to dismiss all claims against the federal defendants.  (United States' Mot. to Dismiss, June 30, 2011 [Dkt. No. 5].)  After plaintiff failed to respond, that motion was granted as conceded.  (Order, July 19, 2011 [Dkt. No. 6].)  On July 27, 2011, the District filed the pending motion seeking dismissal or summary judgment as to each of plaintiff's claims, which plaintiff opposes.  (Pl.'s Opp'n, Aug. 11, 2011 [Dkt. No. 9].)

---

[2] In March 2010, plaintiff entered a plea of guilty to the charge of making a false report to the police.  *See United States v. Hammond*, 2009 CDC 013333 (D.C. Super Ct. Mar. 9, 2010).  The Court suspended imposition of a sentence and placed plaintiff on unsupervised probation for six months.  *Id.*; *see* D.C. Code § 16-710 ("in criminal cases in the Superior Court of the District of Columbia, the court may, upon conviction, suspend the imposition of sentence").

The motion is now ripe for the Court's consideration.

## ANALYSIS

### I.   STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim, the question for the court is whether, assuming the truth of all "well-pleaded factual allegations," those allegations "plausibly give rise to an entitlement to relief" by presenting "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" in that "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making this determination, a court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint[,] . . . matters of which [courts] may take judicial notice," *E.E.O. C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir.1997), and documents "appended to [a motion to dismiss] and whose authenticity is not disputed" if they are "referred to in the complaint and are integral" to a plaintiff's claim. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

### II.   EIGHTH AMENDMENT CLAIM

Plaintiff alleges that her treatment by MPD police officers and deputy marshals while in custody on June 18, 2009, violated her Eighth Amendment "right to be free from "cruel and unusual punishment," and that the District is liable for that violation under 42 U.S.C. § 1983.[3]

---

[3] Plaintiff's amended complaint divides this claim into two counts, one of which is entitled "violation of the Eighth Amendment to the Constitution" (Count IX) and the other "violation of the Civil Rights Act 42 U.S.C. § 1983" (Count X). (Am. Compl. ¶¶ 88-96.) However, with respect to the District, plaintiff may only obtain damages for an Eighth Amendment violation via a § 1983 action. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 113

(Am. Compl. ¶ 94.) "Under 42 U.S.C. § 1983, a municipality, such as the District, is only liable for the acts of its employees if a plaintiff can show that: (1) he was deprived of a constitutional right; and (2) such deprivation was the result of a government policy or custom." *Hampton v. Government of District of Columbia*, 764 F. Supp. 2d 147 (D.D.C. 2011) (citing *Warren v. District of Columbia*, 353 F.3d 36, 38 (D. C. Cir. 2004)).  The District moves to dismiss plaintiff's Eighth Amendment claim on two independent grounds: (1) that the Eighth Amendment does not apply to pretrial detainees; or (2) that plaintiff failed to allege a government custom, policy or practice as required to support municipal liability under § 1983.

The District is correct, and plaintiff does not argue to the contrary, that the Eighth Amendment "does not apply to pretrial detainees." *Robertson v. District of Columbia*, No. 09-cv-1188, 2010 WL 3238996, at *3 (D.D.C. Aug. 16, 2010) (quoting *Powers-Bunce v. Dist. of Columbia*, 479 F. Supp. 2d 146, 153 (D.D.C. 2007)).  Rather, it "'applies only to individuals who are being punished, and thus does not protect those against whom the government has not "secured a formal adjudication of guilt in accordance with due process of law."'" *Id*. (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979)).  It is undisputed that plaintiff was a pretrial detainee at all relevant times, depriving her of any claim under the Eighth Amendment.[4]  It follows that her § 1983 claim for damages based on the alleged Eighth Amendment violation must be

---

(1983) ("If [the plaintiff] has suffered an injury barred by the Federal Constitution, he has a remedy for damages under § 1983.").  Plaintiff's amended complaint also refers to the alleged violations of the D.C. Human Rights Act as grounds for her § 1983 claim (*see* Am. Compl. ¶ 94), but § 1983 applies only to "a right secured by the Constitution or laws of the United States." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49 (1999).

[4]A pretrial detainee in the District is not without constitutional rights, but those rights are protected under the due process clause of the Fifth Amendment. *See, e.g.*, *Powers–Bunce v. District of Columbia*, 659 F. Supp. 2d 173, 179 (D.D.C. 2009).

dismissed.[5]

### III.   PLAINTIFF'S CLAIMS FOR ASSAULT, BATTERY, NEGLIGENCE AND PUNITIVE DAMAGES

In it motion to dismiss, the District argues (1) that plaintiff's claims for assault and battery should be dismissed as barred by the one-year statute of limitations because the alleged assault and battery occurred on June 18, 2009, and plaintiff did not file her complaint until February 2, 2011 (District Mem. at 8 (citing D.C. Code § 12-301(4)); (2) that plaintiff's negligence claim, which was based on the deputy marshals' failure to protect her from third-party conduct while she was in the cellblock at Superior Court, should be dismissed because the District cannot be held liable for the actions of federal deputy marshals (District Mem. at 10); and (3) that any claim for punitive damages should be dismissed because punitive damages are not available against a municipality absent express statutory authorization.  (*Id.* at 13 (citing *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975).)   Plaintiff chose not to respond to any of these arguments in its opposition.

It is well-established in this Circuit that "when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded."  *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) (citing *FDIC v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997)); *see also* Local Civil Rule 7(b) ("If [an opposition] memorandum is not filed within the prescribed time, the Court may treat the motion as conceded."); *Twelve John Does v. District of*

---

[5]Having concluded that plaintiff's § 1983 claim must be dismissed due to plaintiff's failure to allege an Eighth Amendment violation, the Court need not address defendant's alternative argument that plaintiff failed to allege a custom, policy, practice or failure to train, as required for municipal liability under § 1983.

*Columbia*, 117 F.3d 571, 577 (D.C. Cir.1997) ("Where the district court relies on the absence of a response as a basis for treating the motion as conceded, we honor its enforcement of the rule."). "The decision to treat a claim as conceded . . . is highly discretionary." *See Hampton v. Government of Dist. of Columbia*, 764 F. Supp. 2d 147, 150 n.2 (D.D.C. 2011).

In the instant case, plaintiff, who is represented by counsel, timely filed an opposition to the District's motion, but did not address the District's arguments for dismissing the claims for assault, battery, negligence and punitive damages. The record suggests that plaintiff's lack of response was deliberate as the District pointed it out in its reply (District Reply at 3-4), yet plaintiff has not sought to supplement its opposition. Accordingly, the Court will exercise its discretion to treat the District's arguments for dismissal of these claims as conceded and dismiss the claims for assault, battery, negligence, and punitive damages.

### IV.   REMAINING STATE LAW CLAIMS

With the dismissal of plaintiff's federal claim, the basis for this Court's jurisdiction disappears. Although the Court could exercise supplemental jurisdiction over plaintiff's remaining claims, it will instead remand those claims to Superior Court. *See* 28 U.S.C. § 1367(c)(3) ( "The district court[ ] may decline to exercise supplemental jurisdiction" where it has "dismissed all claims over which it has original jurisdiction."); *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state law claims."); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, ... the state

claims should be dismissed as well."); *Agudas Chasidei Chabad of U.S. v. Russian Fed'n*, 528 F.3d 34, 950 (D.C. Cir. 2008) ("There is a substantial presumption in favor of a plaintiff's choice of forum." (citations omitted)).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the District's motion to dismiss. Plaintiff's Eighth Amendment, assault, battery, negligence and punitive damages claims are dismissed with prejudice and all remaining claims are remanded to Superior Court. A separate Order accompanies this Memorandum Opinion.

                                                                            /s/
                                            ELLEN SEGAL HUVELLE
                                            United States District Judge

Date: November 18, 2011